# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

**NOTICE OF ISSUANCE OF MANDATE**



DATE:   May 10, 2005

TO:     Norbert G. Jaworski
        United States District Court
        Southern District of Illinois
        Room 142
        750 Missouri Avenue
        P.O. Box 186
        East St. Louis, IL  62202

FROM:   Gino J. Agnello, Clerk

RE:   04-1495,04-1496,04-1608,04-1628,04-1650,04-1651,04-1660,04-1661,04-2162,
      04-2687
        Kircher, Carl v. Putnam Funds Trust; Dudley, Steve v. Putnam Int'l Equity,
        etal; Dudley, Steve v. Putnam Investment, etal; Parthasarathy, T.K. v.
        Artisan Funds Inc, etal;Luettinger, Dorothy,etal v Scudder Int'l Fund, etal;
        Columbia Wanger; Vogeler, Gary v. Columbia Acorn Trust; Jackson, Avery v.
        VanKampen Series, etal; Spurgeon, Terry v. Pacific Life Ins. Co.
03 C 691, 03 C 852, 03 C 853, 03 C 673, 03 C 692, 03 C 843, 04 C 56, 04 C 355
                        David R. Herndon, Judge
        Herewith is the mandate of this court in this appeal, along
        with the Bill of Costs, if any.  A certified copy of the
        opinion/order of the court and judgment, if any, and any
        direction as to costs shall constitute the mandate.

        [ ] No record filed
        [X] Original record on appeal consisting of:
**ENCLOSED:**                              **TO BE RETURNED AT LATER DATE:**
        [12]    Volumes of pleadings              [ ]
        [1]     Volumes of loose pleadings        [ ]
        [ ]     Volumes of transcripts            [ ]
        [2]     Volumes of exhibits               [ ]
        [ ]     Volumes of depositions            [ ]
        [ ]     In Camera material                [ ]
        [ ]     Other_____    [ ]

                Record being retained for use     [ ]
                in Appeal No. _____

        Copies of this notice sent to:        Counsel of record
        [ ]     United States Marshal
        [ ]     United States Probation Office
**NOTE TO COUNSEL:**
        If any physical and large documentary exhibits have been filed in
        the above-entitled cause, they are to be withdrawn ten days from the
        date of this notice.  Exhibits not withdrawn during this period will
        be disposed of.

# CERTIFIED COPY

## In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 04-1495, 04-1496, 04-1608, 04-1628, 04-1650,
04-1651, 04-1660, 04-1661, 04-2162 & 04-2687

CARL KIRCHER and ROBERT BROCKWAY,
individually and on behalf of a class, *et al.*,

*Plaintiffs-Appellees,*

*v.*

PUTNAM FUNDS TRUST and PUTNAM
INVESTMENT MANAGEMENT, LLC, *et al.*,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Southern District of Illinois.
Nos. 03-CV-0691-DRH *et al.*—G. Patrick Murphy, *Chief Judge,*
and David R. Herndon and Michael J. Reagan, *Judges.*

ARGUED JANUARY 7, 2005—DECIDED APRIL 5, 2005

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Complaints filed in the
circuit court of Madison County, Illinois, charge several
mutual funds with setting prices in a way that arbitra-
geurs can exploit. The funds removed the suits to federal
court and asked the district judges to dismiss them under

the Securities Litigation Uniform Standards Act of 1998
(SLUSA). Instead the federal judges remanded each suit.
Last year we held that these remands are appealable. See
*Kircher v. Putnam Funds Trust*, 373 F.3d 847 (7th Cir. 2004).
Now we must decide whether SLUSA blocks litigation in state
court. (Plaintiffs have asked us to overrule our decision about
appellate jurisdiction, but their arguments are unpersuasive.)

Mutual funds must set prices at which they sell and re-
deem their own shares once a day, and must do so at the net
asset value of the funds' holdings. (All of the defendants,
which operate in interstate and international commerce,
are regulated under the Investment Company Act of 1940;
we call them "mutual funds" for convenience.) Each
defendant sets that price at 4 p.m. Eastern time, shortly
after the New York Stock Exchange closes. Orders placed
before the close of business that day are executed at this
price.

When the funds hold assets that trade in competitive
markets, they must value the assets at their market price.
15 U.S.C. §80a-2(a)(41)(B)(ii), 17 C.F.R. §270.2a-4(a).
Defendants implement this requirement by valuing secur-
ities at the closing price of the principal exchange or market
in which the securities are traded. For domestic securities
this yields a current price; for securities of foreign issuers,
however, it may produce a price that is as much as 15 hours
old. (European markets close 5 or 6 hours ahead of New York;
Asian markets close 12 to 15 hours before New York.)

Many securities trade on multiple markets or over the
counter. Stock of a Japanese firm that closes in Tokyo at
¥10,000 might trade in Frankfurt at €75.22 (equivalent to
¥10,500) between the close in Tokyo and the close in
New York—but the mutual fund nonetheless would value
each share at ¥10,000, because that was its most recent
price in the issuer's home market. If foreign stocks move
predominantly up during this interval (or if one foreign

security moves substantially higher), the mutual fund as a whole would carry a 4 p.m. price below what would be justified by the latest available information, and an arbitrageur could purchase shares before 4 p.m. with a plan to sell the next day at a profit. Likewise arbitrageurs could gain if the foreign stock falls after the close in its home market, and the arbitrageur knows that the U.S. mutual fund will be overpriced at 4 p.m. relative to the price it is likely to have the next trading day when new information from abroad finally is reflected in the fund's valuation. See Richard L. Levine, Yvonne Cristovici & Richard A. Jacobsen, *Mutual Fund Market Timing*, Federal Lawyer 28 (Jan. 2005).

A short-swing-trading strategy would not be attractive unless the foreign securities' prices had moved enough to cover the transactions costs of matched purchases and sales of the mutual fund shares, but for no-load funds that have substantial investments in foreign markets this condition sometimes is satisfied. Arbitrageurs then make profits with slight risk to themselves, diverting gains from the mutual funds' long-term investors while imposing higher administrative costs on the funds (whose operating expenses rise with each purchase and redemption). Plaintiffs contend that the mutual funds acted recklessly in failing to block arbitrageurs from reaping these profits. Available means might include levying fees on short-swing transactions, adopting to a front-end-load charge, reducing the number of trades any investor can execute (or deferring each trade by one day), and valuing the securities of foreign issuers at the most current price in *any* competitive market (organized or over the counter), and not just the closing price on the issuers' home stock exchanges. Some mutual funds have begun to take steps to curtail arbitrage, while disclosing residual vulnerabilities more prominently, but the litigation targets those funds that have not done so (or targets the period before a given fund acted).

4                                    Nos. 04-1495, *et al.*

SLUSA added to the Securities Act of 1933 and the Securities Exchange Act of 1934 parallel provisions curtailing certain class actions under state law. As in last year's jurisdictional opinion, we limit attention to §16 of the 1933 Act, 15 U.S.C. §77p, because the additions to the 1934 Act are functionally identical. See 15 U.S.C. §78bb. As amended by SLUSA, §77p(b) reads:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

Investments in mutual funds are "covered securities," see §77p(f)(3), and all of these suits are "covered class actions," see §77p(f)(2), because plaintiffs seek to represent more than 50 investors and each action is direct rather than derivative. (Derivative proceedings are not "covered class actions". See §77p(f)(2)(B). See also *Burks v. Lasker*, 441 U.S. 471 (1979), and *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991), which note that state-law derivative claims may proceed against federally regulated mutual funds.) Section 77p(d) contains a number of additional exceptions, but plaintiffs do not contend that any of them applies to these actions. Thus everything turns on subsection (b), which forecloses a suit based on state law in which a private class alleges "(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipula-

Nos. 04-1495, *et al.*                                                    5

tive or deceptive device or contrivance in connection with
the purchase or sale of a covered security."

That familiar language comes from Rule 10b-5, 17 C.F.R.
§240.10b-5, which is based on §10(b) of the 1934 Act, 15
U.S.C. §78j(b). Rule 10b-5 reads:

> It shall be unlawful for any person, directly or in-
> directly, by the use of any means or instrumental-
> ity of interstate commerce, or of the mails or of any
> facility of any national securities exchange,
>
>> (a) To employ any device, scheme, or artifice to
>> defraud,
>>
>> (b) To make any untrue statement of a material
>> fact or to omit to state a material fact neces-
>> sary in order to make the statements made, in
>> the light of the circumstances under which they
>> were made, not misleading, or
>>
>> (c) To engage in any act, practice, or course of
>> business which operates or would operate as a
>> fraud or deceit upon any person, in connection
>> with the purchase or sale of any security.

Every court of appeals to encounter SLUSA has held that its
language has the same scope as its antecedent in Rule 10b-5.
*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395
F.3d 25, 34-36 (2d Cir. 2005); *Rowinski v. Salomon Smith
Barney Inc.*, 2005 U.S. App. LEXIS 2660 at *11-12 (3d Cir.
Feb. 16, 2005); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596-
97 (8th Cir. 2002); *Falkowski v. Imation Corp.*, 309 F.3d
1123, 1131 (9th Cir. 2002), amended, 320 F.3d 905 (2003);
*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d
1334, 1342-43 (11th Cir. 2002). We agree with this conclu-
sion. SLUSA is designed to prevent plaintiffs from migrating
to state court in order to evade rules for federal securities
litigation in the Private Securities Litigation Reform Act
of 1995. See *Spielman v. Merrill Lynch, Pierce, Fenner &*

Nos. 04-1495, *et al.*

*Smith, Inc.*, 332 F.3d 116, 122-24 (2d Cir. 2003) (discussing how PSLRA and SLUSA work). SLUSA can do its job only if sub-section (b) covers those claims that engage Rule 10b-5 (and thus come within the 1995 statute) if presented directly under federal law; this is why SLUSA borrows the Rule's language. Unfortunately, however, the other circuits do not agree among themselves (or with the SEC) what Rule 10b-5 itself means. The phrase "in connection with the purchase or sale" of a security is the sticking point.

The Supreme Court held in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), that investors who neither purchase nor sell securities may not collect damages in pri-vate litigation under §10(b) and Rule 10b-5, even if failure to purchase or sell was the result of fraud. Assuming that SLUSA's "in connection with" language means "able to pursue a private right of action after *Blue Chip Stamps*," plaintiffs attempted to frame complaints that avoid any allegations of purchase or sale. All but one of the classes is defined as investors who held shares of a given mutual fund between two specified dates. As an effort to evade SLUSA, this class definition is a flop: some of the investors who held shares during the class period must have purchased their interest (or increased it) during that time; others, who owned shares at the beginning of the period, undoubtedly sold some or all of their investment during the window. Each of the funds has substantial daily turnover, so the class of "all holders" during even a single day contains many purchas-ers and sellers. All of these class actions therefore must be dismissed. (Plaintiffs do not contend that any *other* part of SLUSA is pertinent; in particular, they did not argue in their briefs—and did not maintain at oral argument despite the court's invitation—that their suits allege mismanagement rather than deceit or manipulation. See *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977). Counsel for the plaintiffs declined to explain how state law would support a direct action that did not rely on deceit or manipulation. A claim

based on mismanagement likely would need to be cast as a derivative action, which none of these suits purports to be. Nor does any of the suits assert that a mutual fund broke a promise, so that state contract law would supply a remedy.)

The complaint in *Spurgeon v. Pacific Life Insurance Co.* avoids this pitfall. It defines the class as all investors who held the fund's securities during a defined period *and* neither purchased nor sold shares during that period. *Blue Chip Stamps* would prevent such a private action from proceeding under Rule 10b-5. Plaintiffs insist that any private action that is untenable after *Blue Chip Stamps* also is unaffected by SLUSA. The district judge, agreeing with this perspective, remanded *Spurgeon* to state court.

An equation between SLUSA's coverage and the scope of private damages actions under Rule 10b-5 has the support of the second circuit (*Dabit*), the eighth circuit (*Green*), and the eleventh circuit (*Riley*). The ninth circuit (*Falkowski*), by contrast, has written that coverage of SLUSA tracks the coverage of §10(b) and Rule 10b-5 when enforced by *public* plaintiffs (the SEC or a criminal prosecutor). The third circuit (*Rowinski*) has reserved decision on this issue. The Securities and Exchange Commission filed a brief in *Dabit* as amicus curiae supporting the view that SLUSA tracks the full scope of §10(b) and Rule 10b-5, not just their enforcement in private actions. The way the *Spurgeon* class has been defined prevents us from following the third circuit's path: we must answer the question rather than postpone its resolution.

To say that SLUSA uses the same language as §10(b) and Rule 10b-5 is pretty much to resolve the point. Section 10(b) defines a federal crime, and it also permits the SEC to enforce the prohibition through administrative proceedings. Invocation of this anti-fraud rule does not depend on proof that the agency or United States purchased or sold securities; instead the "in connection with" language ensures that the fraud occurs in securities transactions rather than

some other activity. See *SEC v. Zandford*, 535 U.S. 813, 821-22 (2002); *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12 (1971).

*Blue Chip Stamps* came out as it did not because §10(b) and Rule 10b-5 are limited to situations in which the plaintiff itself traded securities, but because a private right of action to enforce these provisions is a judicial creation and the Court wanted to confine these actions to situations where litigation is apt to do more good than harm. The Justices observed that anyone can *say* that a failure to trade bore some relation to what the issuer did (or didn't) disclose, but that judges and juries would have an exceedingly hard time knowing whether a given counterfactual claim ("I *would have* traded, if only . . .") was honest. The Court thought it best to limit private actions to harms arising out of actual trading, which narrows the affected class and simplifies proof, while leaving other securities offenses to public prosecutors.

Decisions since *Blue Chip Stamps* reiterate that it deals with private actions alone and does not restrict coverage of the statute and regulation. See *United States v. O'Hagan*, 521 U.S. 642, 664 (1997); *Holmes v. SIPC*, 503 U.S. 258, 284 (1992); *United States v. Naftalin*, 441 U.S. 768, 774 n.6 (1979). By depicting their classes as containing entirely non-traders, plaintiffs do not take their claims outside §10(b) and Rule 10b-5; instead they demonstrate only that the claims must be left to public enforcement. It would be more than a little strange if the Supreme Court's decision to block private litigation by non-traders became the opening by which that very litigation could be pursued under state law, despite the judgment of Congress (reflected in SLUSA) that securities class actions must proceed under federal securities law or not at all. *Blue Chip Stamps* combined with SLUSA may mean that claims of the sort plaintiffs want to pursue must be litigated as derivative actions or

committed to public prosecutors, but this is not a good reason to undercut the statutory language.

Could the SEC maintain an action under §10(b) and Rule 10b-5 against municipal funds that fraudulently or manipulatively increased investors' exposure to arbitrage? Suppose the funds stated in their prospectuses that they took actions to prevent arbitrageurs from exploiting the fact that each fund's net asset value is calculated only once a day. That statement, if false (and known to be so), could support enforcement action, for the deceit would have occurred in connection with investors' purchases of the funds' securities. Similarly, if these funds had stated bluntly in their prospectuses (or otherwise disclosed to investors) that daily valuation left no-load funds exposed to short-swing trading strategies, that revelation would have squelched litigation of this kind.

These observations show that plaintiffs' claims depend on statements made or omitted in connection with *their own* purchases of the funds' securities. They could have brought them directly under Rule 10b-5 in federal court (to the extent that the purchases occurred within the period of limitations). Indeed, most of the approximately 200 suits filed against mutual funds in the last two years alleging that the home-exchange-valuation rule can be exploited by arbitrageurs have been filed in federal court under Rule 10b-5. Our plaintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court in the hope that a local judge or jury may produce an idiosyncratic award. It is the very sort of maneuver that SLUSA is designed to prevent.

We hold that SLUSA is as broad as §10(b) itself and that limitations on private rights of action to enforce §10(b) and Rule 10b-5 do not open the door to litigation about securities transactions under state law. Plaintiffs' claims are connected to their own purchases of securities and thus are blocked by

10                              Nos. 04-1495, *et al.*

SLUSA, whose preemptive effect is not confined to knocking
out state-law claims by investors who have *winning* federal
claims, as plaintiffs suppose. It covers both good and bad
securities claims—*especially* bad ones. The judgments of the
district courts are reversed, and the cases are remanded
with instructions to undo the remand orders and dismiss
plaintiffs' state-law claims.

A true Copy:

    Teste:

                             *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*

USCA-02-C-0072—4-5-05

# United States Court of Appeals

## For the Seventh Circuit

## Chicago, Illinois 60604

CERTIFIED COPY

### JUDGMENT - WITH ORAL ARGUMENT

**Date: April 5, 2005**

**BEFORE:**     Honorable FRANK H. EASTERBROOK, Circuit Judge

Honorable KENNETH F. RIPPLE, Circuit Judge

Honorable DIANE P. WOOD, Circuit Judge

Nos. 04-1495, 04-1496, 04-1608, 04-1628, 04-1650,
     04-1651, 04-1660, 04-1661, 04-2162 & 04-2687

CARL KIRCHER and ROBERT BROCKWAY, individually
and on behalf of a class, et al.,
                Plaintiffs - Appellees
     v.

PUTNAM FUNDS TRUST and PUTNAM INVESTMENT MANAGEMENT, LLC, et al.,
                Defendants - Appellants

Appeals from the United States District Court for the
Southern District of Illinois.
Nos. 03 C 691, 03 C 852, 03 C 853, 03 C 673,
     03 C 692, 03 C 843, 04 C 56 & 04 C 355,
G. Patrick Murphy, Chief Judge, and David R. Herndon
and Michael J. Reagan, Judges.

        The judgments of the District Court are REVERSED, with costs,
and the cases are REMANDED with instructions to undo the remand orders
and dismiss plaintiffs' state-law claims.  The above is in accordance
with the decision of this court entered on this date.

(1036-110894)

A True Copy:
Date:

Clerk of the United States
Court of Appeals for the
Seventh Circuit

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

May 2, 2005

Before

**Hon.** Frank H. Easterbrook, Circuit Judge

**Hon.** Kenneth F. Ripple, Circuit Judge

**Hon.** Diane P. Wood, Circuit Judge

| | |
|---|---|
| Carl Kircher and Robert Brockway, individually and on behalf of a class, *et al.*, *Plaintiffs-Appellees*,<br><br>**Nos.** 04-1495, 04-1496, 04-1608, v.<br>04-1628, 04-1650, 04-1651,<br>04-1660, 04-1661, 04-2162 &<br>04-2687<br><br>Putnam Funds Trust and Putnam Investment Management, LLC, *et al.*, *Defendants-Appellants*. | Appeals from the United States District Court for the Southern District of Illinois.<br><br>Nos. 03-CV-0691-DRH *et al.*<br>G. Patrick Murphy, *Chief Judge,* and David R. Herndon and Michael J. Reagan, *Judges.* |

**Order**

Plaintiffs-appellees filed a petition for rehearing and rehearing en banc on April 19, 2005. No judge in regular active service has requested a vote on the petition for rehearing en banc,* and all of the judges on the panel have voted to deny rehearing. The petition for rehearing is therefore DENIED.

---

* Chief Judge Flaum and Judges Rovner and Williams took no part in the consideration of this matter.